Donald L. HORNSTEIN, doing business as Allied Publishing, Publisher of the Illinois Fireman's Friend, Plaintiff,

v.

Neil F. HARTIGAN, individually and as Attorney General of and for the State of Illinois, Defendant.

No. 86–3199.

United States District Court,
C.D. Illinois,
Springfield Division.

Jan. 15, 1988.

Charles H. Delano, Springfield, Ill., for plaintiff.

Michael W. Loker, Patricia Morris, Asst. Attys. Gen., Springfield, Ill., for defendant.

## OPINION

MILLS, District Judge:

Cross motions for summary judgment.

Plaintiff challenges the constitutionality of Ill.Rev.Stat. ch. 38, ¶ 17–2(c) (1985) on First Amendment grounds.

Prior restraint on the press?

Yes.

Here are the facts. Donald Hornstein, d/b/a Allied Publishing, is the publisher of a periodical entitled *"Illinois Fireman's Friend."* The periodical is distributed free of charge and is subsidized entirely through solicitation of advertising. The content of the periodical deals with fire safety and is directed toward a lay audience as opposed to professional firefighters. The publication is privately owned

and not associated with any fire district or governmental agency. The publication contains a disclaimer which states that it is not associated with any professional fire organization.

Chapter 38, ¶ 17–2(c) of the Illinois Revised Statutes provides:

(c) No person may solicit advertisements to appear in any firefighters', law enforcement or police officers' magazine, journal or other publication without first having obtained a current certificate of qualification from the Illinois Attorney General. Upon the presentation of proof that the applicant does in fact represent a legitimate and bona fide firefighters', law enforcement or police officers' publication, the Attorney General may issue to the applicant a certificate of qualification to solicit advertisements on behalf of such publication. The Attorney General shall prescribe forms and promulgate rules governing the making of applications and the certification of persons under this subsection.

A violation of this proscription is a Class A Misdemeanor for the first offense and becomes a Class 4 Felony upon a subsequent conviction. Ill.Rev.Stat. ch. 38, ¶ 17–2(d) (1985).

Hornstein challenges the application of this statute to his publication. The material facts are undisputed and the case may be decided on summary judgment.

## LAW AND ANALYSIS

### A.

The First Amendment commands that "Congress shall make no law ... abridging the freedom ... of the press...." U.S. Const. amend. I. This proscription has long been held to be applicable to the states through the Fourteenth Amendment. *Gitlow v. New York*, 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed.2d 1138 (1925); *Near v. Minnesota*, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931).

■ Although worded in absolute terms, the Supreme Court has not historically treated the First Amendment as an absolute prohibition on any governmental regu-

lation of the press. *Minneapolis Star & Tribune Co. v. Minnesota Comm'n of Revenue*, 460 U.S. 575, 581, 103 S.Ct. 1365, 1369, 75 L.Ed.2d 295 (1983). However, when First Amendment rights are implicated, normal deference is not given to the legislative judgment and the state must show that the regulation does not impinge on First Amendment rights. *City of Watseka v. Illinois Public Action Council*, 796 F.2d 1547, 1551 (7th Cir.1986). *See also FCC v. League of Women Voters*, 468 U.S. 364, 388 n. 18, 104 S.Ct. 3106, 3122 n. 18, 82 L.Ed.2d 278 (1984) (*quoting Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 843–44, 98 S.Ct. 1535, 1543–44, 56 L.Ed.2d 1 (1978)).

Nevertheless, the precise level of judicial scrutiny which the Court applies to the statute is dependent upon the precise impact the statute has on the protected speech and may also be dependent upon the characterization of the publication as commercial or noncommercial speech. Here, the state argues that we should apply the lesser standard of scrutiny applicable to commercial speech. We first address whether this is, as the state maintains, a pure commercial speech case.

### B.

■ The state begins its argument under the assumption that the statute acts as a restriction on pure commercial speech. And the state is correct in its assertion that commercial speech receives only a limited form of protection under the First Amendment. *See, e.g., Posadas De Puerto Rico Assoc. v. Tourism Co. of Puerto Rico*, 478 U.S. 328, 106 S.Ct. 2968, 2976, 92 L.Ed.2d 266 (1986). However, we believe that the state mischaracterizes the statute as burdening no more than pure commercial speech.

Pure commercial speech "does no more than propose a commercial transaction." *Id.* (*quoting Virginia Pharmacy Bd. v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 762, 96 S.Ct. 1817, 1825, 48 L.Ed.2d 346 (1976)). Apparently, the state would contend that because the stat-

ute controls the solicitation of advertising, it necessarily affects only commercial speech. This ignores the full regulatory impact of the statute.

We recognize that the regulation concerns advertising and consequently implicates commercial speech. More importantly, however, the statute requires the publisher of noncommercial speech to receive a license from the state in order that it may solicit advertising to support its publication. In order to receive approval, the publisher must prove to the state that it is a "bona fide" fire or police publication. Solicitation without the license results in criminal penalties against the publisher. But this case involves more than solicitation. It concerns solicitation on behalf of a periodical which is in and of itself entitled to full protection under the First Amendment. Hence, the statute not only burdens the ability to solicit advertising but in turn directly burdens the dissemination of noncommercial speech.

A quick glance at Plaintiff's magazine reveals that it clearly disseminates views apart from the simple proposal of a commercial transaction. Thus, because the regulation burdens noncommercial speech, we cannot apply the lesser standards applicable to pure commercial speech and must judge the statute according to traditional First Amendment principles.

C.

The Supreme Court has recognized "that a statute that requires ... a 'license' for the dissemination of ideas is inherently suspect." *Secretary of the State of Maryland v. Joseph H. Munson Co., Inc.,* 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984). This, of course, comports with the principle that any form of prior restraint on publication is presumptively invalid and will only be sustained upon the showing of a compelling governmental interest of the

highest degree. *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 419, 91 S.Ct. 1575, 1577, 29 L.Ed.2d 1 (1971).

The state maintains that this is not a prior restraint because Plaintiff remains free to publish his ideas albeit without the benefit of advertising revenue. We disagree.

The statute is not removed from prior restraint analysis because the state can invent a more creative way to chill speech other than an outright ban. *Miami Herald Publishing Co. v. Tornillo,* 418 U.S. 241, 256, 94 S.Ct. 2831, 2839, 41 L.Ed.2d 730 (1974). The censor will rarely be so blatant as to impose a cut and dried prohibition. Holding the advertising revenues of a newspaper hostage to a state license is certainly an example of a prior restraint on speech. *See, e.g., Grosjean v. American Press Co.,* 297 U.S. 233, 245, 56 S.Ct. 444, 447, 80 L.Ed.2d 660 (1936). In *Grosjean,* Justice Sutherland held that a 2% licensing tax on advertising revenue was an unconstitutional prior restraint on the press. *Id.* at 250, 56 S.Ct. at 449.

Recently, the Supreme Court has read *Grosjean* as being dependent on the finding of a censorial motive on the part of the legislature. *Minneapolis Star,* 460 U.S. at 580, 103 S.Ct. at 1369. However, this reading of *Grosjean* does not save the statute at issue. Even if we assume no censorial motive on the part of the legislature [1], the statute fails to meet constitutional muster.

Although general economic regulation of the press is permissible, differential taxation based on content is valid only if the state can show that the regulation serves a compelling state interest and is narrowly tailored to serve that interest. *Arkansas Writers' Project, Inc. v. Ragland,* — U.S. ——, 107 S.Ct. 1722, 95 L.Ed.2d 209 (1987); *Minneapolis Star,* 460 U.S. at 591–92, 103

---

1. There is some suggestion, supported by the record, that some censorial motive did exist in this case. However, we need not reach that question. The major evil in a licensing scheme is that even if no censorial motive existed at the time of the passage of the legislation, the power to use the statute for future censorial purposes is always a possibility. In speaking about the exercise of First Amendment rights, the Supreme Court has specifically noted that "the threat of sanctions may deter their exercise almost as potently as the actual application of sanctions." *NAACP v. Button,* 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963).

S.Ct. at 1375–76. This standard surely applies to this case where the state goes beyond burdening the press through a taxation scheme, as was the case in the abovecited cases, and directly prohibits the periodical from utilizing its only means of gathering revenue.

The second evil of singling out a particular publication is also present in that the prohibition is based on the qualifications of the speaker. Restrictions based on who disseminates information are no less offensive than those based on the content of the publication. In any event, the restriction is also content-based as it only applies to periodicals concerned with law enforcement and firefighting activities.

As a result, the state must show that the statute serves a compelling state interest and is narrowly tailored to serve that interest. The state asserts that its interest in preventing fraud and abusive solicitations is compelling. Even if this interest is laudible and perhaps compelling, it must be drawn with the least restriction on First Amendment freedoms. *Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 637, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980). Here, like in *Schaumburg,* the legitimate state interest can be amply served by penal laws which can directly punish fraud or abusive conduct. A prior restraint on the press cannot be justified in light of the other means available to serve the interest.

### CONCLUSION

*Ergo,* Plaintiff's motion for summary judgment is ALLOWED.

Defendant's motion for summary judgment is DENIED.

Ill.Rev.Stat. ch. 38, ¶ 17–2(c) is hereby declared unconstitutional as applied to Plaintiff.[2]

Case CLOSED.

---

**2.** Although we have grave doubts about the facial validity of this statute, the Plaintiff has requested that we only strike it as applied to him. Hence, we only reach that far.